IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANK WILLIAMS,

       Plaintiff,

vs.                                                                                                            No. 1:14-cv-00376 RB/KBM

JAMES STOKES,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Substitution of the United States as Defendant Pursuant to 25 U.S.C. § 450f of the ISDEAA. (Doc. 13). The United States and Plaintiff oppose this motion. Having considered the submissions of counsel and relevant law, the Court denies this motion.

**I.  Background**

In October 2009, an unidentified African American man allegedly shortchanged a cashier at the Santa Ana Star Casino located on the Santa Ana Pueblo near Albuquerque, New Mexico. (Doc. 1). Video surveillance recorded the man as he exited the casino and drove away in a green Cadillac. (*Id.*) Santa Ana Pueblo Police Department Officer James Stokes investigated the incident. (*Id.*)

A vehicle registration inquiry revealed that the Cadillac was registered to Yvonne Sanchez or Franklin Williams of Los Lunas, New Mexico. (Doc. 1). An NCIC report showed two African American men with the name Franklin Williams resided in the Albuquerque area; Plaintiff and another man whose physical characteristics more closely matched the suspect on the

video. (*Id.*) Despite the fact that the suspect in the video did not resemble Plaintiff, Defendant Stokes filed a criminal complaint and affidavit for arrest warrant that erroneously identified Plaintiff as the perpetrator. (*Id.*) In fact, Plaintiff had never set foot inside the Santa Ana Star Casino. (*Id.*)

On July 3, 2011, Plaintiff was arrested and held in jail through September 14, 2011. (Doc. 1). Because he had been employed as a corrections officer, Plaintiff was threatened by other inmates and held in solitary confinement. (*Id.*) On August 12, 2011, Plaintiff's public defender filed a motion for review of the video as it obviously did not depict Plaintiff. (*Id.*) On September 14, 2011, Defendant Stokes reviewed the video and dismissed the criminal complaint. (*Id.*)

On April 23, 2014, Plaintiff filed suit in this Court asserting claims under 42 U.S.C. §1983 for false arrest and racial profiling in violation of the Fourth and Fourteenth Amendments of the United States Constitution. (Doc. 1). Plaintiff requests compensatory damages, punitive damages, attorneys' fees, and costs. (*Id.*)

On October 17, 2014, Defendant JStokes filed a Motion for Substitution of the United States as Defendant Pursuant to the ISDEAA ("ISDEAA"), 25 U.S.C. § 450, *et seq*. (Doc. 13.) The United States and Plaintiff oppose the motion because the ISDEAA does not authorize substitution of the United States for constitutional torts. (Docs. 25 and 26). For purposes of this motion, it is undisputed that Defendant was a tribal employee acting within the scope of his employment at all relevant times.

## II.   Discussion

Congress enacted the ISDEAA "in order to achieve 'maximum Indian participation in the direction of educational as well as other Federal services to Indian communities so as to render such services more responsive to the needs and desires of those communities.' " *Salazar v.*

*Ramah Navajo Chapter*, 132 S.Ct. 2181, 2186 (2012) (quoting 25 U.S.C. § 450a(a)). To achieve this aim, the ISDEAA provides that tribes may enter into "self-determination contracts" with the Secretary of the Interior and the Secretary of Health and Human Services to administer programs or services that otherwise would have been administered by the federal government. *See* 25 U.S.C. § 450f(a). These programs include construction, social services, education, medical services, and law enforcement. *See* 25 U.S.C. § 450f(a)(1).

After implementation of the ISDEAA, tribes incurred substantial unforeseen costs in carrying out self-determination contracts, such as the cost of liability insurance. To remedy this situation, Congress amended the ISDEAA three times. The first amendment to the ISDEAA was enacted in 1987 and directed that for "personal injury" claims arising from the performance of medical functions under self-determination contracts, tribes and tribal contractors would be deemed part of the Public Health Service in the Department of Health and Human Services, thereby making the Federal Tort Claims Act applicable to that class of claims. *See* Pub. L. No. 100-202, 101 Stat. 1329, 1329-246 (1987) (codified as amended at 25 U.S.C. § 450f(d)). The second amendment to the ISDEAA was enacted in 1988 and required the federal government to obtain liability insurance for Indian tribes, tribal organizations, and tribal contractors carrying out self-determination contracts. *See* Pub. L. No. 100-472, § 201(c)(1), 102 Stat. 2285, 2289 (1988) (codified at 25 U.S.C. § 450f(c)(1)).

The third amendment to the ISDEAA, which is the provision at issue here, was enacted in 1989, and reenacted on a permanent basis in 1990. *See* Pub. L. No. 101-121, § 315, 103 Stat. 701, 744 (1989); Pub. L. No. 101-512, tit. III, § 314, 104 Stat. 1915, 1959-60 (1990) (codified at 25 U.S.C. § 450f note) ("Section 314"). Section 314 states, in pertinent part:

> With respect to claims resulting from the performance of functions . . . under a
> contract, grant agreement, or any other agreement or compact authorized by the

> [ISDEAA] . . . , an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior or the Indian Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement: *Provided*, That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act.

25 U.S.C. § 450f note.

Defendant seizes on the phrase "any civil action" to support his contention that Section 314 requires substitution of the United States as the defendant in this action. In so doing, Defendant ignores the clause "be afforded the full protection and coverage of the Federal Tort Claims Act." *See* 25 U.S.C. § 450f note. It bears underscoring that Federal Tort Claims Act "does not extend or apply to a civil action against an employee of the Government . . . brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Indeed, the United States Supreme Court has recognized that constitutional claims are not cognizable under the Federal Tort Claims Act's limited waiver of immunity. *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994). Courts have held that the Federal Tort Claim Act exceptions apply with equal force to claims brought against a tribal organization under Section 314. *See Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008) (applying discretionary function exception). Therefore, the "full protection and coverage of the Federal Tort Claims Act" does not extend to a claim that a tribal employee violated the Constitution or a federal statute. *See* 28 U.S.C. § 2679(b)(1)-(2) (stating that the Federal Tort Claims Act is the exclusive remedy for claims against federal employees acting within the scope of their employment for property damage, personal injury, or death, but excluding claims for a violation of the Constitution or

federal statutes). In that Plaintiff brings only federal constitutional claims, the Federal Tort Claims Act does not cover the claims in this action.

The Supreme Court has emphasized that "it is 'a cardinal principle of statutory construction'" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " *TRW v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted); *see United States v. Menasche*, 348 U.S. 528, 538-539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' " (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883))). If the Court were to adopt Defendant's reading of Section 314 the phrase " be afforded the full protection and coverage of the Federal Tort Claims Act" would be rendered "insignificant, if not wholly superfluous." *Duncan,* 533 U.S. at 174. Such a result would be inconsistent with Supreme Court authority. *Id.* Clearly, the phrase "any civil action" must be read in conjunction with the phrase "be afforded the full protection and coverage of the Federal Tort Claims Act" in order to correctly construe Section 314. Reading the statute in this manner leads to the conclusion that Section 314 means that any civil action brought against a tribal employee such as Defendant will be afforded the full protection and coverage of the Federal Tort Claims Act. *See* 25 U.S.C. § 450f note.

The Federal Tort Claims Act waives the United States' defense of sovereign immunity[1] and authorizes suits against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with

---

[1] It is well settled that the United States may not be sued without its consent. *See United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003).

5

the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The Federal Tort Claims Act expressly excludes constitutional claims. 28 U.S.C. § 2679(b)(2)(A). Therefore, the waiver of sovereign immunity granted by the Federal Tort Claims Act does not encompass constitutional claims.

The Federal Tort Claims Act incorporates the Federal Employees Liability Reform and Tort Compensation Act, commonly known as the Westfall Act. *Osborn v. Haley*, 549 U.S. 225, 229 (2007). The Westfall Act accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. *Id.* (*citing* 28 U.S.C. § 2679(b)(1)). When a federal employee is sued for wrongful or negligent conduct, the Westfall Act empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.* at 230 (*citing* 28 U.S.C. § 2679(d)(1), (2)). Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee." 28 U.S.C. § 2679(d)(1). If the Attorney General does not make the substitution, "the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(3). The Westfall Act offers the only potential mechanism for substitution in this case because Section 314 contains no substitution provision. The United States determined that certification and substitution are inappropriate in this case because Plaintiff brings only federal constitutional claims.

This reading is consistent with Section 314's statement that tribal employees "are deemed employees of the Bureau [of Indian Affairs] or [Indian Health] Service while acting within the scope of their employment in carrying out the contract or agreement[.]" *See* 25 U.S.C. § 450f note. This language indicates that Section 314 treats tribal employees the same as federal

employees. Federal employees do not have absolute immunity from constitutional violations under the same circumstances. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (recognizing cause of action against federal employees in their individual capacities for violations of certain constitutional rights). Rather, the Federal Tort Claims Act grants federal employees immunity for common law torts committed within the scope of their employment. Section 314 grants this same immunity to tribal employees. Accordingly, tribal employees do not have absolute immunity from constitutional violations under the same circumstances.

Defendant's reliance on *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) and *Ingram v. Faruque*, 728 F.3d 1239 (10th Cir. 2013) is misplaced because these cases do not address the ISDEAA. Specifically, *Hui* addressed 42 U.S.C. § 233, which provides that the Federal Tort Claims Act is the "exclusive" remedy for claims of personal injury or death arising from the performance of medical, surgical dental, or related functions by employees and commissioned officers of the Public Health Service. *Hui*, 559 U.S. at 806. The *Ingram* case was based on 38 U.S.C. § 7316(a)(1), which mirrors the language of 42 U.S.C. § 233(a), and provides that the Federal Tort Claims Act is the "exclusive" remedy for claims of malpractice or negligence of a healthcare employee of the Veterans Administration. *Ingram,* 728 F.3d at 1247. It is material that neither *Hui* nor *Ingram* addressed the ISDEAA.

Notably, the ISDEAA does not contain language similar to the statutory language at issue in *Hui* and *Ingram*. Unlike the operative language in 42 U.S.C. § 233 and 38 U.S.C. § 7316(a)(1), the ISDEAA does not provide that the Federal Tort Claims Act is the "exclusive" remedy for claims against tribal employees. *See* 25 U.S.C. § 450f note. Rather Section 314 provides that tribal employees are "afforded the full protection and coverage of the Federal Tort

7

Claims Act." In that the Federal Tort Claims Act excludes constitutional claims from its scope, 28 U.S.C. § 2679(b)(2)(A), *Hui* and *Ingram* do not support Defendant's argument. Furthermore, substitution for constitutional claims under the ISDEAA is inappropriate.

### III. Conclusion

Section 314 does not allow the United States to be substituted as the defendant in this action.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Substitution of the United States as Defendant Pursuant to 25 U.S.C. § 450f of the ISDEAA, (Doc. 13), is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**